**ROCANVILLE CORPORATION,
Plaintiff-Appellant,**

v.

**NATURAL GAS PIPELINE COMPANY
OF AMERICA, Defendant-Appellee.**

No. 86–1681.

United States Court of Appeals,
Fifth Circuit.

July 30, 1987.

---

Thomas R. Hartnett, Dallas, Tex., for plaintiff-appellant.

Duncan Boeckman, Jerome Mrowca, Golden, Potts, Boeckman & Wilson, Dallas, Tex., for defendant-appellee.

Before BROWN, REAVLEY, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Rocanville Corporation sued the Natural Gas Pipeline Company of America (Natural Gas) to reform a contract to allow a price increase. The district court granted Natural Gas summary judgment on the ground that Rocanville presented no evidence of mutual mistake. For the reasons outlined below, we affirm.

## I. BACKGROUND

Rocanville Corporation is a closely-held Texas corporation whose president and sole stockholder is William H. Hudson. By the end of 1978, Rocanville had several natural gas wells ready for production, and was seeking a buyer. Natural Gas made Rocanville an offer on December 11, 1978, and the two companies signed a contract on February 25, 1979. The "Price, Billing and Payment" clause of the contract was carried over essentially unchanged from Natural Gas' December 1978 offer, and provided that Natural Gas would pay:

> ... [t]he highest price for which such gas qualifies under the Natural Gas Policy Act of 1978 (N.G.P.A.) along with any applicable escalations or price adjustments provided for by the N.G.P.A.

Record Vol. 1 at 28.

Meanwhile, in November 1978 Congress had passed the Natural Gas Policy Act (NGPA) in response to the energy crisis. Section 107 of the NGPA granted the Federal Energy Regulatory Commission (FERC) authority to set higher maximum prices for natural gas produced from high-cost sources. 15 U.S.C. § 3317. The purpose of section 107 was to encourage production from such sources. Natural Gas does not dispute that the wells involved in the instant case are high-cost wells under section 107.

In February 1980, a year after Rocanville and Natural Gas signed their contract, FERC announced its first proposed regulations under section 107. FERC Order No. 99, promulgated on August 15, 1980, specified procedures for obtaining the section 107 incentive price. 18 C.F.R. § 271.-701–.703 (1986). Under these regulations, the applicant must be making a "first sale" of "tight formation gas for which there is a *negotiated contract price.*" 18 C.F.R. § 271.701 (emphasis added). The parties do not dispute that their contract involves a first sale from a tight formation. The regulations further define a "negotiated contract price" as "any price established by a contract provision that specifically references the incentive pricing authority of the Commission under section 107 of the NGPA, by a contract provision that prescribes a specific fixed rate, or by the operation of a fixed escalator clause." 18 C.F.R. § 271.02(a)(1). The contract in the instant case contains neither a "fixed rate," a "fixed esclator clause," nor a specific mention of section 107.

Rocanville sued in a Texas state court to reform the contract by adding to the price clause the words, "including any price adjustments established pursuant to Section 107(b) of the N.G.P.A.," on the grounds that these words had been omitted because of a mutual mistake. Natural Gas removed the case to federal court, which entered summary judgment for Natural Gas, finding that Rocanville had raised no mutual-mistake fact issue.

## II. DISCUSSION

The Fifth Circuit has upheld the FERC regulation requiring that parties seeking a section 107 incentive price insert a specific "negotiated contract price" term in their contracts. *Texas Eastern Transmission*

*Corp. v. F.E.R.C.*, 769 F.2d 1053, 1067 (5th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1967–68, 90 L.Ed.2d 652 (1986); *Pennzoil Co. v. F.E.R.C.*, 671 F.2d 119 (5th Cir.1982). The *Pennzoil* Court held that, in promulgating Order No. 99, FERC had made a legitimate decision to allow parties to gas contracts to self-select themselves for eligibility for the section 107 incentive price, by inserting clauses specifically referring to section 107 in their contracts. *Pennzoil*, 671 F.2d at 127. The Court also held that market forces would prevent the parties from abusing this power. *Id.* at 128. Rocanville does not dispute that Order No. 99 is valid and establishes a bright-line rule requiring a seller who wants the incentive price to refer to section 107 explicitly. Rocanville contends, however, that the contract itself, and the evidence in the record concerning the contract negotiations, indicate that Rocanville and Natural Gas intended Rocanville to receive the incentive price.

■ Under Texas law, a court will reform a contract when the party seeking reformation proves: (1) that the parties actually agreed to a certain term, but (2) the written contract does not reflect the parties' true agreement because of a mutual mistake. *Thalman v. Martin*, 635 S.W.2d 411, 413 (Tex.1982); *RGS, Cardox Recovery, Inc. v. Dorchester Enhanced Recovery Co.*, 700 S.W.2d 635, 639 (Tex. App.—Corpus Christi [13th Dist.] 1985, writ ref'd n.r.e.). The classic reformation case would involve a scrivener's mistake in changing, for example, the middle initial in the name of a grantee on a deed. *Henderson v. Henderson*, 694 S.W.2d 31, 34 (Tex.App.—Corpus Christi [13th Dist.] 1985, writ ref'd n.r.e.).

■ The mutual mistake, however, must concern the terms of the contract itself, not some other feature of the transaction. For example, the Texas Supreme Court has held that the parties' assumption that certain lots would, once surveyed, reach to the shores of a lake, did not justify reformation of a real-estate sales contract to substitute different lots. *National Resort Communities, Inc. v. Cain*, 526 S.W.2d 510 (Tex. 1975). In *Cain*, as in the instant case,

there was no dispute that the parties intended a certain result, but there was also no proof that the result was part of the parties' "true agreement." *Id.* at 513. The *Cain* contract correctly reflected the nature of the parties' agreement *at the time the contract was signed;* therefore, the court denied reformation. *Id.* at 513–14.

■ The district judge in the instant case concluded that Rocanville's own evidence, including affidavits from Rocanville's president, Hudson, showed that the February 25, 1979, contract exactly reflected everything that the parties intended it to reflect at the time. Neither party could have known, in February 1979, that in August 1980, FERC would require a gas seller seeking an incentive price under section 107 to cite section 107 specifically in the sale contract. All Rocanville and Natural Gas knew was that the newly-passed NGPA would affect their prices; hence the contract included a clause referring to the NGPA as a whole. Rocanville presented no evidence that the parties had intended a more specific reference. The instant case cannot be distinguished from *Cain*. Therefore, the district court did not err in granting Natural Gas summary judgment.

AFFIRMED.